UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

NICHOLAS LACRUZE,                        )
                                         )
            Plaintiff,                   )
                                         )
      v.                                 )          No. 1:20-cv-02148-JPH-DML
                                         )
D. ZATECKY, et al.                       )
                                         )
            Defendants.                  )

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT
AND DIRECTING FURTHER PROCEEDINGS**

Plaintiff Nicholas LaCruze, an Indiana inmate, brought this action under 42 U.S.C. § 1983 alleging that the defendants violated his Eighth Amendment rights in the Spring of 2020 by acting with deliberate indifference to the risk of spreading COVID-19, using excessive force against him, and failing to decontaminate him or allow him access to water after spraying him with o/c spray. The defendants moved for summary judgment arguing that Mr. LaCruze failed to exhaust his available administrative remedies as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), before filing this lawsuit.[1] For the reasons explained below, the defendants' motion for summary judgment, dkt. [32], is **denied** because there are issues of material fact that must be resolved at a hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008).

### I. Summary Judgment Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty*

---

[1] The medical defendants moved for summary judgment, dkt. [32], and the correctional defendants joined the motion, dkt. [36].

*Lobby, Inc.,* 477 U.S. 242, 248 (1986). The court views the facts in the light most favorable to the non-moving party, and all reasonable inferences are drawn in the non-moving party's favor. *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011).

## II. Exhaustion Standard

On a motion for summary judgment, "[t]he applicable substantive law will dictate which facts are material." *National Soffit & Escutcheons, Inc., v. Superior Systems, Inc.,* 98 F.3d 262, 265 (7th Cir. 1996) (citing *Anderson,* 477 U.S. at 248). The substantive law applicable to this motion for summary judgment is the PLRA, which requires that a prisoner exhaust available administrative remedies before bringing a suit concerning prison conditions. 42 U.S.C. § 1997e(a); *see Porter v. Nussle,* 534 U.S. 516, 524-25 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532 (citation omitted).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006) (footnote omitted); *see also Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir. 2004) ("In order to properly exhaust, a prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'") (quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002)). "In order to exhaust administrative remedies, a prisoner must take all steps prescribed by the prison's grievance system." *Ford v. Johnson,* 362 F.3d 395, 397 (7th Cir. 2004).

The defendants bear the burden of establishing that the administrative remedies upon which they rely were available to the plaintiff. *See Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015)

("Because exhaustion is an affirmative defense, the defendants must establish that an administrative remedy was available and that [the plaintiff] failed to pursue it."). "[T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross v. Blake,* 136 S. Ct. 1850, 1858 (2016) (internal quotation omitted). "[A]n inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* at 1859 (internal quotation omitted).

### III. Facts

#### A. IDOC Grievance Process

The Indiana Department of Correction (IDOC) has a grievance process to resolve inmates' concerns and complaints relating to their conditions of confinement prior to filing suit in court. Dkt. 34-1 at 2. The grievance process consists of four steps.[2] First, an inmate must attempt to resolve the issue informally. Second, if informal attempts to resolve an inmate's concern fail, he must file a formal grievance. Next, if the inmate is not satisfied with the response to the formal grievance, he may submit an appeal to the warden. Finally, if the inmate is not satisfied with the response from the warden or the warden's designee, he may file an appeal to the IDOC grievance manager. Exhaustion of the grievance process requires pursuing a grievance to the final step. *Id.* at 2-3.

#### B. Mr. LaCruze's Grievance History

IDOC's grievance records for Mr. LaCruze reflect that his only formal grievance was filed in 2015, years before the events alleged in his complaint. *Id.* at 3; dkt. 24-2.

---

[2] The grievance policy was revised on April 1, 2020, but the substantive requirements remained the same. Dkt. 34-1 at 2.

Mr. LaCruze alleges that the defendants violated his constitutional rights while he was confined at Pendleton Correctional Facility (Pendleton). In March 2020 at the beginning of the COVID-19 pandemic, a sick inmate was moved into Mr. LaCruze's dorm. Mr. LaCruze became ill and was eventually moved to the prison's gym with other quarantined inmates. Dkt. 1 at 9-10.

On April 17, 2020, inmates in the gym demanded to speak with a supervisor when an officer attempted to move a COVID-19 positive inmate into the gym. In response, officers deployed physical and chemical force against the plaintiff and other inmates. Dkt. 1 at 12-14. As a result of the incident, disciplinary action was taken against Mr. LaCruze and he was transferred to the Westville Control Unit (Westville) on April 23, 2020. *Id*. at 15.

On May 7, 2020, Mr. LaCruze submitted a request for interview form seeking 29 grievance forms. Dkt. 40-1 at 39. He informed the grievance specialist that May 7, 2020, was the first day he had access to mail since the beginning of April when he was first placed in quarantine at Pendleton. *Id*. The grievance specialist responded that it was not reasonable to request so many forms and that he would provide Mr. LaCruze with two grievance forms. *Id*.

Mr. LaCruze submitted numerous grievance forms and return of grievance forms with his response to the motion for summary judgment. But because the returned grievances were not given grievance numbers, it is difficult to match the return of grievance forms with the corresponding grievance.

A grievance dated May 13, 2020, complains that Pendleton staff failed to take precautions to prevent Mr. LaCruze from contracting COVID-19. Dkt. 40-1 at 29. The grievance form was stamped "received" by the grievance office on May 20, 2020. *Id*. A return of grievance form for a grievance received on May 20, 2020, rejected the grievance because it was late. *Id*. at 11. The form also states, "Mr. LaCruze, you had enough time to fill out a grievance before he [sic] left ISR

[Pendleton] on 4/22/20. Grievances were available upon request from the Grievance Specialist." *Id*.

Two grievances submitted on May 20, 2020, concerned the use of force at Pendleton on April 17, 2020, and were stamped "received" by the grievance office on June 3, 2020. *Id*. at 14, 26. A return of grievance form for a grievance received on June 3, 2020, rejected the grievance because it was late. *Id*. at 13. The form also states, "Mr. [La]Cruz, continuing to flood this office with frivolous grievances will result in my recommendation that your grievance privileges be suspended." *Id*.

A grievance dated May 23, 2020, states:

> My grievance is my grievance was return to me because they sayin I had enough time to fill out the grievance before I left ISR on 4-22-2020. Grievances were not available upon request because I was on quarantine for COVID 19. I had no access to grievances or outgoing mail because I was positive for COVID 19. You return my grievance with no grievance # up top.

Dkt. 40-1 at 22 (errors in original). The grievance form was stamped "received" by the grievance office on June 4, 2020. *Id*. A return of grievance form for a grievance received on June 4, 2020, rejected the grievance as "frivolous and unfounded."  *Id*. at 21. The form also states:

> Mr. LaCruze, since your arrival at WCU from ISR, on 4/22/2020, you have submitted twelve grievances, four of which are on my desk at this writing. That scarcely constitutes being denied access to grievance forms. Regarding the grievances that were returned due to being filed late. You had ample opportunity to file those grievances before you left ISR. I previously cautioned you about flooding this office with frivolous grievances and I will caution you again.

*Id*.

## IV. Discussion

Strict compliance is required with respect to exhaustion, and a prisoner must properly follow the prescribed administrative procedures in order to exhaust his remedies. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). The PLRA's exhaustion requirement is not subject to either

waiver by a court or futility or inadequacy exceptions. *Booth v. Churner,* 532 U.S. 731, 741, n.6 (2001); *McCarthy v. Madigan,* 503 U.S. 140, 112 S. Ct. 1081 (1992) ("Where Congress specifically mandates, exhaustion is required.").

However, an inmate is not required to exhaust unavailable remedies. *Ross*, 136 S. Ct. at 1858. For example, an administrative procedure is unavailable when "it operates as a simple dead end," when it "might be so opaque that it becomes, practically speaking, incapable of use" or when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

The defendants present evidence that Mr. LaCruze failed to successfully submit any grievance regarding the allegations in his complaint. Records produced by Mr. LaCruze also reveal that Westville's grievance officer rejected his grievances as untimely and asserted that grievance forms had been available to him at Pendleton. On the other hand, Mr. LaCruze's exhibits attached to his response assert that he lacked access to grievance forms until the Westville grievance specialist provided him with forms in May 2020. *See* dkt. 40-1 at 22.

In short, there is a factual dispute between the parties as to whether the grievance process was available to Mr. LaCruze regarding the claims proceeding in this action. Specifically, the parties dispute at least:

- whether Mr. LaCruze lacked access to grievance forms between April 17, 2020, and May 13, 2020, when he first submitted a grievance at Westville; and

- whether Mr. LaCruze's May 2020 grievances were timely.

The parties' dispute regarding the availability of the grievance process cannot be resolved on summary judgment; it must instead be resolved at a *Pavey* hearing.

## V. Conclusion

The defendants' motion for summary judgment, dkt. [32], is **denied** for the reasons set forth above. The defendants shall have **through December 30, 2021**, to notify the Court whether they wish to withdraw their affirmative defense or proceed to a *Pavey* hearing.

**SO ORDERED.**

Date: 12/16/2021

James Patrick Hanlon
James Patrick Hanlon
United States District Judge
Southern District of Indiana


Distribution:

NICHOLAS LACRUZE
239236
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
6908 S. Old US Hwy 41
P.O. Box 1111
CARLISLE, IN 47838

Douglass R. Bitner
KATZ  KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com

Alexander Robert Carlisle
OFFICE OF THE ATTORNEY GENERAL
Alexander.Carlisle@atg.in.gov

Sarah Jean Shores-Scisney
KATZ  KORIN CUNNINGHAM, P.C.
sshores@kkclegal.com

Benjamin Charles Wade
INDIANA ATTORNEY GENERAL
ben.wade@atg.in.gov

7