UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| NICHOLAS LACRUZE, | ) |
|             Plaintiff, | ) |
| v. | ) No. 1:20-cv-02148-JPH-KMB |
| D. ZATECKY, et al., | ) |
|             Defendants. | ) |

**ORDER ON MEDICAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Nicholas LaCruze sued Wexford of Indiana, LLC, and two of its employees, Dr. Lamar and Dr. Levine ("Medical Defendants") alleging that they were deliberately indifferent to his need for mental health care while he was incarcerated at Pendleton Correctional Facility and under quarantine due to the COVID-19 pandemic. He further alleges that Wexford (1) failed to enact policies to provide inmates with appropriate medical services and (2) that it maintains policies of providing inadequate mental health treatment and making treatment decisions based on financial incentives rather than medical judgment.

Medical Defendants have filed a motion for summary judgment.[1] Dkt. [93]. For the reasons below, that motion is **granted**.

**I.
Standard of Review**

Parties in a civil dispute may move for summary judgment, which is a way of resolving a case short of a trial. *See* Fed. R. Civ. P. 56(a). Summary judgment

---

[1] Correctional Defendants also moved for summary judgment. Dkt. 97. Their motion is resolved by a separate order.

is appropriate when there is no genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Comm. Sch.*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine dispute" exists when a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572-73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the factfinder. *Miller v. Gonzalez,* 761 F.3d 822, 827 (7th Cir. 2014). The Court is only required to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour every inch of the record" for evidence that is potentially relevant. *Grant v. Tr. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

## II.
## Discovery Dispute

In response to the Medical Defendants' motion for summary judgment, Mr. LaCruze argues that he did not receive complete initial disclosures or responses to his discovery requests. Dkt. 111 at 2. But Mr. LaCruze did not move to compel the Medical Defendants to supplement their responses. His only motion to compel was directed to the correctional defendants. Dkt. 110.

The Court's Scheduling Order states: "Motions to compel must be filed within 60 days of receipt of the inadequate discovery response or deadline to respond if no response was provided. Motions to compel discovery must be accompanied by the relevant portions of the discovery request and the response. The party filing the motion must explain exactly what information is sought and why the response was inadequate." Dkt. 50 at 8-9.

Here, initial disclosures were due on May 31, 2022, *id.* at 2, so any motion to compel relating to the initial disclosures was due by August 1, 2022, and any motion to compel relating to the written discovery requests that Mr. LaCruze served on the Medical Defendants on June 15, 2022, was due by September 13, 2022. During a telephonic discovery conference on June 15, 2022, Mr. LaCruze confirmed that he had received initial disclosures from all defendants. Dkt. 61.

In his response to the Medical Defendants' motion for summary judgment, Mr. LaCruze states that he did not receive responses to his June 15, 2022, discovery requests to the Medical Defendants. Dkt. 111 at 2 (filed October 18, 2022). To the extent that Mr. LaCruze intended for his response to the Medical Defendants' motion for summary judgment to operate as a motion to compel related to either the Medical Defendants' initial disclosures or written discovery served upon them, it is untimely. Dkt. 50 at 8-9 (motion to compel relating to initial disclosures due by August 1, 2022; motion to compel relating to written discovery requests due by September 13, 2022). Furthermore, "[a] motion must not be contained within a brief, response, or reply to a previously filed motion, unless ordered by the court." S.D. Ind. L.R. 7-1(a). So, to the extent Mr. LaCruze

3

intended for his response to serve as a motion to compel additional discovery from the Medical Defendants, that motion is **denied** under Local Rule 7-1(a) as well.

## III.
## Factual Background

Because Medical Defendants moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).

### A. The Parties

Mr. LaCruze is an Indiana Department of Correction ("IDOC") inmate who at all relevant times was housed at Pendleton Correctional Facility ("Pendleton"). Dkt. 98-3 at 11-12.

Defendant Dr. Lamar is a licensed psychologist who was employed by defendant Wexford of Indiana, the company that contracts with the State of Indiana to provide healthcare in Indiana prisons. Lamar Affidavit, dkt. 95-1. Defendant Dr. Levine is a licensed psychiatrist who contracted with Indiana Minority Health Coalition to provide services at Pendleton. Levine Affidavit, dkt. 95-2.

### B. Mr. LaCruze's Access to Mental Health Services While Quarantined

Mr. LaCruze has been diagnosed as bipolar and schizophrenic and suffers from post-traumatic stress syndrome (PTSD), though those diagnoses are not reflected in prison medical records. Medical Records, dkt. 95-3 at 16; LaCruze

4

Deposition, dkt. 95-4 at 4 (10).[2] While incarcerated at Pendleton, he had monthly therapy sessions with Dr. Lamar. *Id.* at 5 (14-15). Although Mr. LaCruze was not directly treated by Dr. Levine, he is suing Dr. Levine because he believes Dr. Levine was Dr. Lamar's supervisor. *Id.*

In late March or early April 2020, Mr. LaCruze began experiencing COVID-19 symptoms and was placed on quarantine. Dkt. 95-4 at 4 (12). He tested positive for the virus on April 19, 2020. Dkt. 95-3 at 5. While on quarantine he was seen twice a day by medical staff, but he was not able to attend his regular sessions with Dr. Lamar. *Id.* at 5 (16-17), 18 (67). One session was scheduled for April 6, 2020, but was cancelled by custody staff. Dkt. 95-3 at 1. The pause in mental health treatment while inmates were quarantined was a safety measure to prevent the spread of COVID-19. Dkt. 95-4 at 5 (15); LaCruze Affidavit, dkt. 111-1 at 60.

Mr. LaCruze did not submit any health care request forms for mental health treatment while on quarantine because prison staff were not accepting them. Dkt. 95-4 at 5 (16). But he made requests to correctional and nursing staff to see Dr. Lamar. *Id.* at 5 (16-17). He never saw Dr. Lamar while on quarantine and he does not know if she knew of his requests. *Id.*

On April 17, 2020, while Mr. LaCruze was quarantined in the Pendleton gym, he assaulted multiple correctional officers during an altercation between inmates and staff regarding COVID-19 quarantine procedures. *Id.* at 7 (25), 14

---

[2] The deposition transcript filed with the Court contains four pages of transcript on each pdf page. The Court cites to the pdf page and includes the transcript page in parentheses.

(50). Mr. LaCruze believes that he may not have assaulted staff if he had been receiving mental health treatment while in quarantine. *Id.* at 8 (28).

Mr. LaCruze agreed at his deposition that Dr. Lamar should not have been required to risk exposing herself to COVID-19 to provide him in-person mental health treatment while Mr. LaCruze was in quarantine, but he believes the prison should have set up phone calls or a hotline to continue regular mental health treatment. Dkt. 95-4 at 5-6 (15-16, 19). He testified at his deposition that he has no evidence of Wexford policies, but that, as the healthcare provider at the prison, Wexford did not provide treatment that should have been provided during quarantine. *Id.* at 7 (24-25), 18 (66-68).

## IV.
## Discussion

The Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty on the states, through the Fourteenth Amendment, "to provide adequate medical care to incarcerated individuals." *Boyce v. Moore*, 314 F.3d 884, 889 (7th Cir. 2002) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "Prison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively serious medical need." *Thomas v. Blackard*, 2 F.4th 716, 721–22 (7th Cir. 2021). "Thus, to prevail on a deliberate indifference claim, a plaintiff must show '(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'" *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021)

(quoting *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)).

The parties dispute whether Mr. LaCruze suffered from a serious mental health condition. For the purposes of this motion, the Court assumes that he did. The Court also assumes that Mr. LaCruze's COVID-19 infection and the injuries that he sustained as a result of having assaulted staff were serious health conditions. The outcome of the Medical Defendants' motion for summary judgment therefore turns on whether Mr. LaCruze can show that they acted with deliberate indifference—that is, that the Medical Defendants consciously disregarded a serious risk to his health. *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016).

Deliberate indifference requires more than negligence or even objective recklessness. *Id.* To establish deliberate indifference, a plaintiff "must provide evidence that an official actually knew of and disregarded a substantial risk of harm." *Id.* "Of course, medical professionals rarely admit that they deliberately opted against the best course of treatment. So in many cases, deliberate indifference must be inferred from the propriety of their actions." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 241 (7th Cir. 2021) (internal citations omitted). The Seventh Circuit has "held that a jury can infer deliberate indifference when a treatment decision is 'so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment.'" *Id.* (quoting *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006)). But when the evidence shows that a decision was based on medical judgment, a

7

jury may not find deliberate indifference, even if other professionals would have handled the situation differently. *Id.* at 241-42.

### A. Dr. Lamar

As Mr. LaCruze conceded during his deposition, it would not have been reasonable to expect mental health professionals to risk exposure to COVID-19 for non-emergent mental health needs of inmates who were in short-term quarantine in April of 2020, very early in the COVID-19 pandemic. Mr. LaCruze has not presented any evidence that Dr. Lamar knew that he was requesting mental health treatment while on quarantine or that he had any need for emergency treatment. The parties do not dispute that, before the pandemic, Mr. LaCruze had monthly sessions with Dr. Lamar. His April 6, 2020, session was cancelled by custody staff, presumably because Mr. LaCruze was quarantined. Eleven days later, Mr. LaCruze assaulted staff and was soon transferred to a different prison.

Even if the Court accepted Mr. LaCruze's speculation that he may not have assaulted staff on April 17 had he met with Dr. Lamar on April 6, Dr. Lamar did not have control over custody staff's decision to cancel mental health appointments for quarantined inmates. Because Mr. LaCruze has not presented any evidence that Dr. Lamar "consciously disregarded a serious risk to his [mental] health," Dr. Lamar is entitled to summary judgment. *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016).

**B. Dr. Levine**

Mr. LaCruze sued Dr. Levine because he believes that Dr. Levine was Dr. Lamar's supervisor. It is undisputed that Dr. Levine was not treating Mr. LaCruze when Mr. LaCruze was placed on quarantine and that Dr. Levine did not know that Mr. LaCruze had requested mental health treatment during that time. Even if Dr. Levine was Dr. Lamar's supervisor, "[l]iability under § 1983 is direct rather than vicarious; supervisors are responsible for their own acts but not for those of subordinates, or for failing to ensure that subordinates carry out their tasks correctly." *Horshaw v. Casper*, 910 F.3d 1027, 1029 (7th Cir. 2018). "For constitutional violations under § 1983 or *Bivens*, a government official is only liable for his or her own misconduct." *Locke v. Haessig*, 788 F.3d 662, 669 (7th Cir. 2015) (cleaned up). Thus "[a] damages suit under § 1983 requires that a defendant be personally involved in the alleged constitutional deprivation." *Matz v. Klotka*, 769 F.3d 517, 528 (7th Cir. 2014); *see Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010) ("[I]ndividual liability under § 1983 requires 'personal involvement in the alleged constitutional deprivation.'").

Here, Dr. Levine is entitled to summary judgment. It is undisputed that he was not personally involved in Mr. LaCruze's mental health treatment. Moreover, Mr. LaCruze cannot prevail on any claim against Dr. Levine based on a theory of vicarious liability. The Court has already held that Dr. Lamar is entitled to summary judgment, so Mr. LaCruze has no claim against Dr. Lamar. And even if he did, Dr. Levine cannot be held responsible for any alleged harm caused by Dr. Lamar solely on the basis that he was her supervisor.

9

### C. Wexford

Mr. LaCruze claims that Wexford policies and practices were the reason that he did not receive sufficient (1) mental health treatment while on quarantine and (2) medical treatment while he had COVID-19 and after he sustained injuries during the April 17, 2020, incident. Dkt. 95-4 at 18 (66-68). These claims may only proceed under *Monell v. Dept. of Social* Services, 436 U.S. 658 (1978); *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021) (explaining that private corporations acting under color of state law—including those that contract with the state to provide essential services to incarcerated people—are treated as municipalities for purposes of Section 1983).

To prevail on his claims against Wexford, Mr. LaCruze must show that "he was deprived of a federal right" and "trace the deprivation" to a Wexford policy or custom. *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021). *Id*. The causation standard is "rigorous" and requires the plaintiff to show "a 'direct causal link' between the challenged municipal action and the violation of [the plaintiff's] constitutional rights." *Id*. (citations omitted).

Mr. LaCruze has presented no evidence of a Wexford policy that led to his lack of medical and mental health treatment. Further, as to his claim that he was denied treatment for his injuries after an altercation, there is no evidence that other inmates were denied treatment in similar situations. *Hildredth v. Butler*, 960 F.3d 420, 426–27 (7th Cir. 2020) (denying prisoner's policy claim in part because he only introduced evidence about delays in his own healthcare and not that of other inmates).

10

As for the temporary lack of mental health appointments while on quarantine and the lack of treatment for COVID-19, Mr. LaCruze has not shown that Wexford's response to the COVID-19 pandemic was deliberately indifferent to a serious risk of harm to his health or safety. In assessing the subjective prong, the question is whether the defendant "responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer v. Brennan*, 511 U.S. 825, 844 (1994). In the early days of a global pandemic, Wexford or correctional staff at Pendleton decided not to allow mental health staff to continue routine visits with quarantined inmates experiencing symptoms of COVID-19. This was a reasonable response to the risk posed to inmates who missed a routine monthly mental health visit because they were quarantined.

Similarly, Wexford's practice of assessing symptomatic inmates, including Mr. LaCruze, twice each day by taking their temperature and asking them to report their symptoms was a reasonable response to the risk posed by the virus. In April 2020, there was no known treatment for COVID-19.[3] And although Mr. LaCruze testified that he had a headache, body tenderness, and chills that went untreated, he presented no evidence that Wexford had a widespread practice of denying basic pain relief to COVID-19 patients. Dkt. 95-4 at 8 (26); *Hildredth*, 960 F.3d at 426–27.

---

[3] *See* United States Food and Drug Administration, Coronavirus (COVID-19) Update: Daily Roundup April 24, 2020, available at https://www.fda.gov/news-events/press-announcements/coronavirus-covid-19-update-daily-roundup-april-24-2020 ("There are currently no FDA-approved products to prevent or treat COVID-19.").

11

Based on the record in this case, no reasonable juror could conclude that Wexford's initial response to the pandemic was deliberately indifferent to the risk posed either by the virus itself or to the effects of pausing routine mental health visits for symptomatic quarantined inmates. Wexford is therefore entitled to summary judgment.

Finally, at screening the Court allowed Mr. LaCruze to proceed on a state law claim against Wexford seeking indemnification. "In Indiana, a party may seek indemnification based on rights under statute, contract, or common law." *Land Innovators Co., L.P. v. Bogan*, 15 N.E.3d 23, 35 (Ind. Ct. App. 2014). Mr. LaCruze did not identify in his complaint any statute, contract, or common law that entitles him to indemnity. Nor has he identified any viable basis for this claim in summary judgment briefing. Therefore, Wexford is entitled to summary judgment on this claim as well.

## V.
## Conclusion

For the foregoing reasons, Medical Defendants' motion for summary judgment, dkt. [93], is **granted.** No partial final judgment shall issue at this time. The **clerk is directed** to terminate Wexford of Indiana, LLC, Dr. Lamar, and Dr. Levine as defendants on the docket.

**SO ORDERED.**

Date: 9/25/2023

                                                                     James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

NICHOLAS LACRUZE
239236
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
6908 S. Old US Hwy 41
P.O. Box 1111
CARLISLE, IN 47838

Carlton Wayne Anker
Lewis and Wilkins LLP
anker@lewisandwilkins.com

Douglass R. Bitner
Stoll Keenon Ogden PLLC
doug.bitner@skofirm.com

Eric Ryan Shouse
Lewis And Wilkins LLP
shouse@lewisandwilkins.com